United States District Court for the Eastern District of Pennsylvania

| | |
|---|---|
| Sakina Ryder, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 16-cv- |
| Nobel Learning Communities, Inc. | : Jury Trial Demanded |
| Defendants. | : |

*Complaint*

Plaintiff, Sakina Ryder, by and through her attorney, hereby submits this Complaint seeking relief from the employment discrimination of Defendant, Nobel Learning Communities, Inc., and makes the following allegations:

*Jurisdiction and Venue*

1. This Court has original jurisdiction to hear this complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, and 2202, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981")), the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991).

2. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(c).

*The Parties*

3. Plaintiff, Sakina Ryder, is an African-American female citizen of the United States and a resident of this judicial district.

4. Defendant, Nobel Learning Communities, Inc. ("Nobel") is a network of more than 180 private preschools, elementary schools and secondary schools in fifteen states, operating under various names including Chesterbrook Academies, Evergreen Academies,

Bethesda Country Day School and Merryhill Schools. Nobel also provides child care services and summer programs. Nobel has a principal place of business at 1615 West Chester Pike, West Chester, Pennsylvania 19382. The acts set forth in this Complaint were authorized, ordered, condoned and/or done by Nobel's officers, agents, employees and/or representatives while actively engaged in the management of Nobel's business, all of whom acted under color of state law.

### *Background Facts*

5. Ms. Ryder was employed by defendant as a Human Resources Administrator from April 1, 2015 until September 10, 2015, when her employment was terminated because of her race.

6. At all times during her employment, Ms. Ryder satisfactorily performed the duties of her position. She worked at defendant's facility at 1615 West Chester Pike, West Chester Pennsylvania, and reported to Gigi Garcia, defendant's Human Resources Director. Ms. Ryder was the only Black employee in defendant's Human Resources Department and the only Black employee in defendant's corporate office.

7. Ms. Ryder experienced discrimination almost from the inception of her employment with defendant. For example, although it is customary for the hiring of new employees to be announced to defendant's corporate office shortly after hire, Ms. Ryder's hire was not announced until July 6, 2015, more than three (3) months after she was hired. <u>See</u> Exhibit A attached hereto and made a part hereof. In contrast, Jen Bredemeier, a White female hired immediately before Ms. Ryder, was introduced to the HR Department two (2) days after she was hired. <u>See</u> Exhibit B attached hereto and made a part hereof. Moreover, unlike the typical new Corporate employee, Ms. Ryder was not given the position description for Human

Resources Administrator, a copy of which is attached hereto as Exhibit C and made a part hereof, until July 29, 2015, almost four (4) months after she began her employment with defendant. Typically, a signed job description is part of an employee's new hire packet and is provided within a few days of hire.

8. On August 6, 2015, Ms. Garcia accused Ms. Ryder of taking personal phone calls during working hours, and suggested that Ms. Ryder take time off from work to address a personal issue. *See* Exhibit D attached hereto and made a part hereof. The personal issue related to a criminal matter involving Ms. Ryder's brother and sister, but in which Ms. Ryder was not involved. Nevertheless, although it is not customary to print background checks after an approval code is issued and an employee is hired, on August 5, 2015, Ms. Garcia accessed Ms. Ryder's criminal background check from March 26, 2015, shortly before her hire date. *See* Exhibit E attached hereto and made a part hereof.

9. On August 26, 2015, Ms. Garcia reprimanded Ms. Ryder allegedly for talking in the breakroom, although no company policy prohibits employees from talking in the breakroom. *See* Exhibit F attached hereto and made a part hereof.

10. On September 2, 2015, Ms. Garcia informed Ms. Ryder that she had received a complaint that Ms. Ryder was going from office to office in the HR Department talking to people, despite the fact that there is no company policy prohibiting such action. In fact, Ms. Ryder did go from office to office in the discharge of her duties. *See* Exhibit G attached hereto and made a part hereof. After Ms. Ryder questioned whether any company policy prohibited such action, Ms. Garcia told Ms. Ryder that she investigated whether Ms. Ryder was going from office to office talking and that over 20 people in different departments said that Ms. Ryder was doing so. This unjustified investigation made working conditions even more hostile for Ms.

Ryder. She felt nervous talking to co-workers or using the breakroom. See Exhibit H attached hereto and made a part hereof.

11. Prior to September 4, 2015, in response to the unjustified criticism of her actions, Ms. Ryder told Ms. Garcia that she believed that she was being treated differently than everyone else in "corporate." Ms. Ryder further asked Ms. Garcia whether one set of rules applied to her and another set of rules applied to everyone else in "corporate." Because all of the other employees in corporate were White, it should have been obvious to Ms. Garcia, and would have been obvious to any reasonable human resources professional, that Ms. Ryder was complaining about being treated differently because of her race.

12. Nevertheless, on September 4, 2015, without justification, Ms. Garcia issued a Final Warning to Ms. Ryder. See Exhibit I attached hereto and made a part hereof.

13. There was no justification for the Final Warning. Rather, it was motivated by Ms. Ryder's race and was in retaliation for her complaint of discrimination. Moreover, in issuing the Final Warning, defendant violated its own progressive disciplinary policy. See Exhibit J attached hereto and made a part hereof.

14. On September 8, 2015, Ms. Garcia sent an email to Ms. Ryder regarding defendant's background checks, a task that was not part of Ms. Ryder's job description but which Ms. Garcia had instructed her to handle. See Exhibit K attached hereto and made a part hereof. However, Ms. Ryder did not have access to the new Fastrax website system, and on September 8, 2015 she had sent an email to Ms. Garcia informing her that she was not able to print on the system. Despite this issue, Ms. Garcia insisted that Ms. Ryder handle this task, and printed all of the employee backgrounds for Ms. Ryder. See Exhibit L attached hereto and made a part hereof.

15. The email was an effort by Ms. Garcia to set Ms. Ryder up for a performance issue that Ms. Garcia could use to terminate her employment.

16. On September 9, 2015, Ms. Ryder wrote to Ms. Garcia complaining that she had been discriminated against because of her race and retaliated against. *See* Exhibit M attached hereto and made a part hereof.

17. On September 10, 2015, Ms. Garcia terminated Ms. Ryder, allegedly for performance issues related to the criminal background checks. *See* Exhibit N attached hereto and made a part hereof. However, in violation of defendant's progressive disciplinary policy, Ms. Ryder had never been counseled for any issue related to the criminal background checks.

18. There was no legitimate basis to terminate Ms. Ryder's employment. Katherine Mathisen and Gigi Garcia, both White employees, had made errors while performing background checks and were not terminated or disciplined in any respect. *See* Exhibit O attached hereto and made a part hereof. Moreover, any performance issue regarding background checks was not stated in the Final Warning, nor was Ms. Ryder counseled or provided additional training with regard to background checks. Rather, Ms. Ryder was terminated because of her race and in retaliation for having complained about unequal treatment, discrimination and retaliation.

19. Ms. Ryder has suffered, is now suffering and will continue to suffer emotional distress, mental anguish, loss of enjoyment of life and other non-pecuniary losses as a direct and proximate result of defendant's discrimination and retaliation.

20. Defendant discriminated and retaliated against Ms. Ryder because of her race.

21. By reason of defendant's discrimination, Ms. Ryder suffered extreme harm, including loss of compensation, loss of income and other employment benefits, loss of professional opportunities, embarrassment and humiliation.

22.     Defendant acted and failed to act willfully, maliciously, intentionally and with reckless disregard for Ms. Ryder's rights.

### *Count I*

### The Civil Rights Act of 1866, 42 U.S.C. § 1981

23.     Plaintiff restates and realleges paragraphs 1-22, inclusive, as though set forth here in full.

24.     Ms. Ryder had a federal statutory right under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as amended, to be accorded the same rights as were enjoyed by White employees with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

25.     Defendant's conduct described above deprived Ms. Ryder of the rights, privileges and immunities guaranteed to her under Section 1981.

26.     Defendant's conduct was intentional, deliberate, willful and conducted in callous disregard of Ms. Ryder's federally protected rights.

27.     By reason of defendants' conduct, Ms. Ryder is entitled to all legal and equitable remedies available under Section 1981.

*Jury Demand*

28.     Ms. Ryder hereby demands a trial by jury as to all issues so triable.

*Prayer for Relief*

WHEREFORE, Plaintiff, Sakina Ryder, respectfully prays that this Court:

a.     adjudge, decree and declare that defendant has engaged in illegal race discrimination and retaliation, and that the actions and practices of defendant complained of herein are violative of her rights under Section 1981;

b.     issue a permanent prohibitory injunction prohibiting defendant and its officers, agents, employees, and successors from engaging in any further unlawful practices, policies, or customs of discrimination and retaliation complained of herein;

c.     order defendant to provide appropriate job relief to Ms. Ryder, including reinstatement;

d.     enter judgment in favor of Ms. Ryder and against defendant for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, reinstatement and past and future mental anguish and pain and suffering in amounts to be determined at trial;

e.     order defendant to pay the attorney's fees, costs and expenses and expert witness fees of Ms. Ryder associated with this action;

f.     grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

7

g.  retain jurisdiction until such time as the Court is satisfied that defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

*[signature]*
Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 910
Philadelphia PA 19110
215 557 9550 tel
215 278 7992 fax
rvance@vancelf.com

*Attorney for Sakina Ryder*